IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BLUE RIDGE ENVIRONMENTAL DEFENSE FUND<br>P.O. Box 88<br>Glendale Springs, NC 28629;<br><br>LOUISIANA BUCKET BRIGADE<br>3416 B Canal Street<br>New Orleans, LA 70119;<br><br>MISSOURI COALITION FOR THE ENVIRONMENT<br>725 Kingsland Ave, Suite 100<br>St. Louis, MO 63130;<br><br>RIVER VALLEY ORGANIZING<br>506 Walnut St.<br>East Liverpool, OH 43920;<br>SIERRA CLUB<br>2101 Webster St., Suite 1300<br>Oakland, CA 94612;<br><br>SIERRA CLUB<br>2101 Webster St., Suite 1300<br>Oakland, CA 94612;<br><br>UNITED CONGREGATIONS OF METRO EAST<br>13 Vieux Carre Dr., Suite 2<br>East St. Louis, IL 62203; *and*<br><br>UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT<br>423 West 800 South, Suite A108,<br>Salt Lake City Utah, UT;<br><br>*Plaintiffs,*<br><br>v.<br><br>MICHAEL S. REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>*Defendant.* | Civil Action No.  22-3134<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

## INTRODUCTION

1. Plaintiffs seek a court order to compel the Administrator of the United States Environmental Protection Agency ("EPA") to promptly take overdue actions mandated by the Clean Air Act, 42 U.S.C. §§ 7401– 7671q, to protect public health and the environment from emissions of hazardous air pollutants from facilities that burn hazardous waste, including incinerators; cement kilns; lightweight aggregate kilns; boilers; process heaters; and hydrochloric acid production furnaces (collectively, "hazardous waste combustors"). EPA has failed to perform its non-discretionary duties under sections 7412(d)(6) and (f)(2) to review the emission standards applicable to hazardous waste combustors, 40 C.F.R. Part 63, Subpart EEE, and to either promulgate revised standards or issue a determination that no revision is required by the deadlines specified by the Act. EPA is thus in ongoing violation of the Act.

2. Hazardous waste combustors emit dangerous air pollutants such as dioxins; mercury; heavy metals such as arsenic and lead; and polychlorinated biphenyls (PCBs) that cause or contribute to health harms, including disease, cancer, and death. *See* [National Emission Standards for Hazardous Air Pollutants]: Final Standards for Hazardous Air Pollutants for Hazardous Waste Combustors, 64 Fed. Reg. 52,828, 53,002-03 (Sept. 30, 1999). This toxic pollution poisons the air, water, and soil of neighboring communities, including environmental justice communities. *See* EPA Office of Inspector General, The EPA Needs to Develop a Strategy to Complete Overdue Residual Risk and Technology Reviews and to Meet the Statutory Deadlines for Upcoming Reviews 8 (Mar. 2022) ("given that minority and low-income populations are more likely to live near industrial facilities").

3. EPA promulgated emissions standards for hazardous waste combustors on October 12, 2005 and October 28, 2008, National Emission Standards for Hazardous Air Pollutants: Final Standards for Hazardous Air Pollutants for Hazardous Waste Combustors

(Phase I Final Replacement Standards and Phase II), 70 Fed. Reg. 59,402 (Oct. 12, 2005); National Emission Standards for Hazardous Air Pollutants: Standards for Hazardous Waste Combustors: Reconsideration, 73 Fed. Reg. 64,068 (Oct. 28, 2008), triggering the Act's mandates that it review and as necessary revise those standards within eight years, *i.e.*, by October 12, 2013 and October 28, 2016. See 42 U.S.C. §§ 7412(d)(6), (f)(2).

4. However, in the nearly fifteen years and twenty years since EPA promulgated standards applicable to hazardous waste combustors, EPA has failed to review those standards and either promulgate revised standards or issue a determination that revision is not necessary. *See* 42 U.S.C. §§ 7412(d)(6) and (f)(2).

5. EPA's failures to review and as necessary revise the standards applicable to hazardous waste combustors harm Plaintiffs and their members. Plaintiffs thus seek both declaratory relief and an order to compel the Administrator to promptly review and as necessary revise the standards applicable to hazardous waste combustors under sections 7412(d)(6) and (f)(2).

6. Moreover, EPA's failures disproportionately harm environmental justice communities, "given that minority and low-income populations are more likely to live near industrial facilities," such as hazardous waste combustors.[1] In March 2022, the EPA's Office of Inspector General recognized this and called on EPA to promote environmental justice by addressing its overdue obligation to review and as necessary revise the standards applicable to hazardous waste combustors and other industrial sources of air pollution.[2]

---

[1] EPA Office of Inspector General, The EPA Needs to Develop a Strategy to Complete Overdue Residual Risk and Technology Reviews and to Meet the Statutory Deadlines for Upcoming Reviews 8 (Mar. 2022).
[2] *Id.* at 8, 17; *see also* Executive Order 12898 – Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations (Feb. 16, 1994); Executive Order

3

**JURISDICTION AND VENUE**

7. This action arises under the Clean Air Act, 42 U.S.C. §§ 7412(d)(6) and (f)(2).

8. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604(a)(2), and 28 U.S.C. §§ 1331 and 1361.

9. This Court may order the Administrator to perform the required actions, issue a declaratory judgment, and grant further relief pursuant to 42 U.S.C. § 7604(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. § 1361.

10. Plaintiffs have a right to bring this action pursuant to the Clean Air Act, 42 U.S.C. § 7604(a)(2); 28 U.S.C. § 1361; and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

11. By certified letter to the Administrator posted on May 26, 2022, with a courtesy copy sent by electronic mail, Plaintiffs provided the Administrator with written notice of this action as required by the Clean Air Act, 42 U.S.C. § 7604(b)(2) and 40 C.F.R. §§ 54.1-54.3.

12. As more than sixty days have passed since Plaintiffs' letter, Plaintiffs have satisfied the notice requirements of 42 U.S.C. § 7604(b)(2).

13. Venue is vested in this Court under 28 U.S.C. § 1391(e) because the Defendant, EPA Administrator Michael S. Regan, resides in this district.

**PARTIES**

14. Plaintiff Blue Ridge Environmental Defense League is a regional, community-based, nonprofit environmental organization with member chapters and individual members in North Carolina, Alabama, Georgia, South Carolina, Tennessee, and Virginia. Blue Ridge Environmental Defense League's mission is to protect the natural environment and public health,

---

14008: Tackling the Climate Crisis at Home and Abroad (Jan. 27, 2021) (prioritizing environmental justice and "the remediation and reduction of legacy pollution").

4

and its founding principles are earth stewardship, environmental democracy, social justice, and community empowerment.

15. Plaintiff Louisiana Bucket Brigade is a nonprofit environmental health and justice organization based in Louisiana. Louisiana Bucket Brigade works with communities that neighbor Louisiana's oil refineries and chemical plants and uses grassroots action to create an informed, healthy society with a culture that holds the petrochemical industry and government accountable for the true costs of pollution to create a healthy, prosperous, pollution-free, and just state where people and the environment are valued over profit.

16. Plaintiff Missouri Coalition for the Environment is a nonprofit environmental organization that mobilizes citizen action to support clean water, clean air, clean energy, and a healthy environment throughout Missouri. Missouri Coalition for the Environment fosters and cultivates local, state-wide, and regional partnerships and delivers vital information to thousands of Missourians on issues that affect water, air, food, health, and the environment.

17. Plaintiff River Valley Organizing is a multi-racial, multi-cultural working-class nonprofit organization that organizes the political power of everyday people and centers the leadership of the most affected community members, including on environmental injustice in the Ohio River Valley.

18. Plaintiff Sierra Club is a national nonprofit corporation with 67 chapters and over 800,000 members dedicated to the protection of public health and the environment, including clean air.

19. Plaintiff United Congregations of Metro East is a nonprofit organization headquartered in East St. Louis, Illinois. UCM is a group of pastors, church members, and other community organizations throughout the St. Louis Metro East who work together on social

justice issues. UCM's mission is to combat the root cause of systemic injustice in its region by uniting people of faith in transforming their communities. UCM works to achieve its mission by providing training and resources to help people uncover their power and come together to change their circumstances.

20. Plaintiff Utah Physicians for a Healthy Environment is a nonprofit organization dedicated to protecting the health and well-being of Utah citizens by promoting science-based education and interventions that result in progressive, measurable improvements to the environment.

21. Defendant Michael S. Reagan is the Administrator of the EPA. In this role, he is charged with upholding the Clean Air Act and taking required regulatory actions according to the schedules established therein.

## LEGAL FRAMEWORK

22. The purpose of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Congress enacted the Clean Air Act in part because "the growth in the amount and complexity of air pollution brought about by urbanization, industrial development, and the increasing use of motor vehicles, has resulted in mounting dangers to the public health and welfare." *Id*. § 7401(a)(2). Thus, the Act prescribes a regulatory framework to control the emissions of hazardous air pollutants from listed categories of industrial sources.

23. First, section 7412 of the Act requires EPA to set emissions standards for listed source categories "as expeditiously as practicable" but not later than November 15, 2000. *Id*. § 7412(e).

24. After EPA has promulgated section 7412(d) standards for a source category, it "shall review, and revise as necessary (taking into account developments in practices, processes, and control technologies)" those standards "no less often than every 8 years." *Id*. § 7412(d)(6). EPA must make all revisions "necessary" to bring standards into full compliance with the Clean Air Act, such as: (1) setting limits on uncontrolled hazardous air pollutant emissions, *see Louisiana Env't Action Network v. EPA*, 955 F.3d 1088, 1096 (D.C. Cir. 2020); and (2) removing illegal exemptions and loopholes for emissions during startup, shutdown, and malfunction periods, *see, e.g., Sierra Club v. EPA*, 551 F.3d 1019, 1028 (D.C. Cir. 2008); *Nat. Res. Def. Council v. EPA*, 749 F.3d 1055, 1062-64 (D.C. Cir. 2014). Thus, every eight years, EPA must review the emissions standards applicable to a source category and either promulgate revised standards or issue a determination that revision is not "necessary" to ensure the emission standards satisfy the Act. 42 U.S.C. § 7412(d)(6).

25. Additionally, EPA "shall, within 8 years after promulgation of standards," review the risk remaining to the public and either promulgate strengthened standards or issue a determination that such standards are not required. *Id.* § 7412(f)(2).[3] Strengthened standards are required if necessary "to provide an ample margin of safety to protect public health … or to prevent, taking into consideration costs, energy safety, and other relevant factors, an adverse environmental effect." *Id.* § 7412(f)(2).

---

[3] Section 7412(f) requires EPA to submit a report to Congress regarding residual risk and to address residual risk if Congress fails to act on that report. EPA submitted the requisite report to Congress in 1999 and Congress did not act on that report. *See* EPA, Residual Risk Report to Congress, EPA-453/R-99-001 (Mar. 1999), https://www.epa.gov/sites/default/files/2013-08/documents/risk_rep.pdf. Thus, EPA is required to review residual risk and either promulgate strengthened standards or issue a determination that such standards are not required. 42 U.S.C. § 7412(f)(2).

# FACTS

26. Facilities that burn hazardous waste emit a number of dangerous air pollutants, including dioxins; mercury; heavy metals such as arsenic and lead; and polychlorinated biphenyls (PCBs). *See* [National Emission Standards for Hazardous Air Pollutants]: Final Standards for Hazardous Air Pollutants for Hazardous Waste Combustors, 64 Fed. Reg. 52,828, 53,002-03 (Sept. 30, 1999). Exposure to hazardous air pollutants emitted by hazardous waste combustors causes or contributes to health harms, including disease, cancer, and death. *Id.*

27. This toxic pollution poisons the air, water, and soil of neighboring communities, including environmental justice communities. *See* EPA Office of Inspector General, The EPA Needs to Develop a Strategy to Complete Overdue Residual Risk and Technology Reviews and to Meet the Statutory Deadlines for Upcoming Reviews 8 (Mar. 2022) ("given that minority and low-income populations are more likely to live near industrial facilities").

28. In 1992, EPA listed six source categories that include hazardous waste combustors: (1) hazardous waste incinerators; (2) Portland cement, which includes cement kilns; (3) clay products manufacturing, which includes lightweight aggregate kilns; (4) industrial/commercial/institutional boilers; (5) process heaters; and (6) hydrochloric acid production furnaces. Initial List of Categories of Sources Under Section 112(c)(1) of the Clean Air Act Amendments of 1990, 57 Fed. Reg. 31,576 (July 16, 1992).

29. Standards for categories of hazardous waste combustors were due "as expeditiously as practicable" but "not later than" November 15, 2000. 42 U.S.C. § 7412(e)(1).

30. In 1999, EPA promulgated § 7412(d)(2) standards for some categories of hazardous waste combustors including hazardous waste burning incinerators; cement kilns; and lightweight aggregate kilns. [National Emission Standards for Hazardous Air Pollutants]: Final

Standards for Hazardous Air Pollutants for Hazardous Waste Combustors, 64 Fed. Reg. 52,828 (Sept. 30, 1999).

31. However, in 2002, the D.C. Circuit vacated these partial standards as unlawful because they did not satisfy the Clean Air Act's minimum stringency requirements. *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855 (D.C. Cir. 2001). EPA agreed to issue replacement standards no later than June 14, 2005. *See* Joint Motion for Entry of Order (Jan. 28, 2002) and Order (Mar. 4, 2002), *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855 (D.C. Cir. 2001) (No. 99-1457).

32. On October 12, 2005—then nearly five years after the November 15, 2000 deadline—EPA promulgated replacement standards for hazardous waste burning incinerators; cement kilns; and lightweight aggregate kilns, and promulgated new standards for hazardous waste burning boilers; process heaters; and hydrochloric acid production furnaces. National Emission Standards for Hazardous Air Pollutants: Final Standards for Hazardous Air Pollutants for Hazardous Waste Combustors (Phase I Final Replacement Standards and Phase II), 70 Fed. Reg. 59,402 (Oct. 12, 2005).

33. This promulgation of standards triggered EPA's obligation to review and as necessary revise the standards applicable to hazardous waste combustors under sections 7412(d)(6) and (f)(2) within eight years, *i.e.*, by October 12, 2013.

34. Because these standards too failed to satisfy the Clean Air Act's minimum stringency requirements, Plaintiff Sierra Club challenged the standards in the D.C. Circuit, Petition for Review, *Sierra Club v. EPA*, No. 05-1441 (D.C. Cir. Dec. 8, 2005), and petitioned EPA to reconsider the standards, Sierra Club, Petition for Reconsideration (Dec. 12, 2005).

35. EPA partially granted reconsideration, National Emission Standards for Hazardous Air Pollutants: [Proposed] Standards for Hazardous Waste Combustors (Reconsideration), 71 Fed. Reg. 52,624 (Sept. 6, 2006); *see also* Petition for Review, *Sierra Club v. EPA*, No. 06-1348 (D.C. Cir. Oct. 16, 2006), and admitted that its replacement standards were not "consistent with the Act and caselaw," *see* National Emission Standards for Hazardous Air Pollutants: Standards for Hazardous Waste Combustors, 72 Fed. Reg. 54,875, 54,875 (Sept. 27, 2007). EPA thus sought and obtained a partial remand of its October 12, 2005 standards. Motion for Partial Voluntary Remand, *Sierra Club v. EPA*, No. 05-1441 (D.C. Cir. Aug. 29, 2008); Order, *Sierra Club v. EPA*, No. 05-1441 (D.C. Cir. Nov. 3, 2008).

36. On October 28, 2008—then nearly eight years after the November 5, 2000 deadline—EPA acted on reconsideration and promulgated revised standards for hazardous waste combustors. National Emission Standards for Hazardous Air Pollutants: Standards for Hazardous Waste Combustors: Reconsideration, 73 Fed. Reg. 64,068 (Oct. 28, 2008).

37. This promulgation of standards also triggered EPA's obligation to review and as necessary revise the standards applicable to hazardous waste combustors under sections 7412(d)(6) and (f)(2) within eight years, *i.e.*, by October 28, 2016.

38. Plaintiff Sierra Club also challenged the October 28, 2008 standards in the D.C. Circuit, Petition for Review, *Sierra Club v. EPA*, No. 08-1392 (D.C. Cir. Dec. 22, 2008), and petitioned EPA to reconsider the standards, Sierra Club, Petition for Reconsideration (Dec. 29, 2008).

39. EPA sought and obtained a full remand of the October 12, 2005 and October 28, 2008 standards. Motion for Voluntary Remand, *Sierra Club v. EPA*, No. 05-1441 (D.C. Cir. June 12, 2009); Order, *Sierra Club v. EPA*, No. 05-1441 (D.C. Cir. Aug. 14, 2009).

40. EPA has not reviewed and as necessary revised the standards applicable to hazardous waste combustors under sections 7412(d)(6) and (f)(2) by the October 12, 2013 or October 28, 2016 deadlines.

41. EPA is thus in ongoing violation of the Clean Air Act's statutory duty to review the standards applicable to hazardous waste combustors and either promulgate revised standards or issue a determination that revised standards are not necessary under sections 7412(d)(6) and (f)(2).

## ALLEGATIONS OF INJURY

42. EPA's failures to take the actions required by sections 7412(d)(6) and (f)(2) for hazardous waste combustors harm Plaintiffs' members who live, work, travel, and spend time outdoors near hazardous waste combustors.

43. Prolonged exposure to hazardous air pollution emitted by hazardous waste combustors harms Plaintiffs' members' health and forces them to limit the outdoor activities that they would otherwise enjoy. Plaintiffs' members' reasonable concerns about the health harms from exposure to hazardous air pollution emitted by hazardous waste combustors also diminishes their enjoyment of their outdoor activities.

44. EPA's failures also harm Plaintiffs and their members by depriving them of procedural rights and protections they would otherwise be entitled to, such as the right to comment on and participate in proceedings to set emissions standards for hazardous waste combustors, and by depriving them of up-to-date information regarding hazardous waste combustors, such as the emission limitations existing sources have achieved, the current pollution control methods, practices, and technologies that could or are being used to achieve emission reductions, the health and environmental risks that remain under the existing standards, or other information relevant to the need for stronger emission and performance standards.

Plaintiffs would use such information to educate their members and the public about pollution emitted by hazardous waste combustors and to advocate for stronger emission standards for hazardous waste combustors. Plaintiffs' members would also use this information to protect themselves and their families from hazardous air pollution from hazardous waste combustors.

45. Accordingly, EPA's failures to take the actions required by sections 7412(d)(6) and (f)(2) for hazardous waste combustors harm Plaintiffs' and their members' health, recreational, aesthetic, procedural, informational, and organizational interests, and a court order requiring EPA to promptly take the actions required by sections 7412(d)(6) and (f)(2) for hazardous waste combustors would redress Plaintiffs' and Plaintiffs' members' injuries.

## CLAIMS FOR RELIEF

46. The allegations of the previous paragraphs are incorporated as if set forth fully below.

47. Both of the EPA Administrator's ongoing failures under 42 U.S.C. § 7412(d)(6) to review the emissions standards applicable to hazardous waste combustors and to either promulgate revised standards or issue a determination that such revisions are not necessary constitute "failure[s] of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of section 7604(a)(2) of the Clean Air Act for each such source category.

48. Both of the EPA Administrator's ongoing failures under 42 U.S.C. § 7412(f)(2) to review the emissions standards applicable to hazardous waste combustors and to either promulgate revised standards or issue a determination that such revisions are not necessary constitute "failure[s] of the Administrator to perform any act or duty under this chapter which is not discretionary" within the meaning of section 7604(a)(2) of the Clean Air Act for each such source category.

49. Each day the Administrator fails to take these legally required actions, Defendant commits new, additional, and ongoing violations of its duties under sections 7412(d)(6) and (f)(2).

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Declare that both of Defendant EPA Administrator's failures under section 7412(d)(6) to review the standards applicable to hazardous waste combustors, 40 C.F.R. Part 63, Subpart EEE, and either promulgate revised standards or issue a determination that such revision is not necessary within eight years, constitute "failure[s] of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of section 7604(a)(2);

(2) Declare that both of Defendant EPA Administrator's failures under section 7412(f)(2) to review the standards applicable to hazardous waste combustors, 40 C.F.R. Part 63, Subpart EEE, and promulgate either revised standards or issue a determination that such standards are not required constitute "failure[s] of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of section 7604(a)(2);

(3) Order the Defendant Administrator to review the standards applicable to hazardous waste combustors, 40 C.F.R. Part 63, Subpart EEE, and promulgate either revised standards or determinations that such revision is not necessary under sections 7412(d)(6) and (f)(2) by an expeditious deadline specified by this Court;

(4) Retain jurisdiction to ensure compliance with this Court's decree;

(6) Award Plaintiffs the costs of this action, including attorney's fees; and

(7) Grant such other relief as the Court deems just and proper.

DATED:	October 14, 2022	Respectfully Submitted,


　　　　　　　　　　　　　　　　　　	*/s/ Kathleen Riley*
　　　　　　　　　　　　　　　　　　	Kathleen Riley (D.C. Bar No. 1618580)
　　　　　　　　　　　　　　　　　　	Jim Pew (D.C. Bar No. 488201)
　　　　　　　　　　　　　　　　　　	Earthjustice
　　　　　　　　　　　　　　　　　　	1001 G Street NW, Suite 1000
　　　　　　　　　　　　　　　　　　	Washington, D.C. 20001
　　　　　　　　　　　　　　　　　　	(202) 667-4500 ext. 5227 or 5220
　　　　　　　　　　　　　　　　　　	kriley@earthjustice.org
　　　　　　　　　　　　　　　　　　	jpew@earthustice.org

*Counsel for Plaintiffs Blue Ridge Environmental Defense League; Louisiana Bucket Brigade; Missouri Coalition for the Environment; River Valley Organizing; Sierra Club; United Congregations of Metro East; and Utah Physicians for a Healthy Environment*